v. United States v. Civitello and Cinde. The government is on submission. Mr. Gowerdew? Yes, Your Honor. Thank you. You can proceed whenever you're ready. Thank you, Your Honor. Eric Galarno on behalf of Jeffrey Civitello Sr. I may please the court co-defendant counsel. Your Honor, this case was a cocaine trafficking case, but it was constructed on the patently incredible testimony of a cooperating witness from the government, that being Christopher Kelly. I don't think there's any dispute in the record that Mr. Kelly had some serious credibility issues, even the district court in assessing his credibility as part of its denial of Mr. Civitello's Rule 33 motion called him, in a case of incredible judicial restraint, not an ideal witness. I'm sorry. Not an ideal witness. You're going to the Rule 33 argument that the judge should have granted a new trial because the witness was incredible? That's the argument you're making, you're focusing on right now? That's what I'm focusing on right now, Your Honor. I know I have a brief. That's almost inevitably a jury question, right? The credibility of witnesses, I mean, it's really extraordinary for us to say as a matter of law or for a district judge to say as a matter of law, someone can't be believed. That's what you're going to focus on now? Well, in this case, Your Honor, I think he was so incredible as a matter of law. If you read through the transcript, all the— Twelve jurors didn't think so, right? So all 12 of them are nuts? I mean, that's really the argument. No, Your Honor. Respectfully, I think there are situations where courts have to review whether the jury perhaps should not have believed Mr. Kelly's testimony. And the problem with this case is that Mr. Kelly, when you go through the testimony, was someone engaged in frauds of all sorts, including frauds on courts, frauds on COVID fraud. He was an incredibly terrible witness. Was he cross-examined on those? Yes, he was, Your Honor. So the jury got to know what his weaknesses were. The jury got to know, yes, Your Honor. And yet they apparently were able to take that into consideration and still reach the verdict they reached, right? And then that brings up other issues, Your Honor, because there was some 404B material that was received— What about Ms. Hollenbeck's testimony? There's no argument that she's incredible as a matter of law, right? No, we're not arguing that she was incredible. I mean, she had pretty significant testimony regarding your client, right? Well, I would respectfully submit that her testimony is very vague and subject to various interpretations. She said, for instance, that my client brought her a bag. I mean, or that his son's car was stopped on the highway. And that's true. But I think the court also highlights another problem with the cases when you have a case that's this dependent on a witness than any, like, 404B ruling. For instance, allowing prior— He also gave her a bag that he said contained $400,000. I'm sorry? He also gave her a bag that he said contained $400,000, right? Your Honor, I understand that. But what I'm also saying, I think, is this highlights other issues that the court should have erred on the side of caution. For instance, the 404B motion relating to Mr. Kelly's claim that my client had prior cocaine dealings with him over 10 years ago. That just could tip the scales in a case like this, especially when a witness is patently incredible. And I know I have a very short period of time. I did want to address also the denial of Mr. Civitello's right to attend sidebars. And just to tee that up, there was no objection to that, right? Well, there wasn't, Your Honor. But the court—it was a pretty firm order. Well, I mean, lawyers are no shrinking violets, right? I mean, if a judge orders something, then lawyers generally object if they don't like it, right? And you get overruled, and so be it. But let me just back up. There was no objection, correct? Or am I missing something? There was no objection, Your Honor. Okay. So we're in the world of plain-air land, right? Even under plain-air, Your Honor. Actually, we're in the world also of waiver, that he waived his right to be present at the sidebar because his lawyer never, when the procedures were outlined, never said, we object, my client wants to be present. Neither the client nor the lawyer ever indicated that he objected. And we have a lot of cases that say that the court does not have to affirmatively tell, you know, invite the defendant up, right? I understand that, Your Honor. I think there's a difference between a waiver and perhaps not raising an objection. A waiver implies that my client had a choice. He was told he can't appear. That's not a choice. So there are cases that do hold for waiver, say the client's aware of the procedure. No, waiver doesn't mean he had a choice. Waiver means that he affirmatively decided not to object. It doesn't mean he was going to win. Waiver means you chose not to assert your objection. Maybe you would have lost the objection, but if you purposely didn't raise the objection, you've waived it. That's what waiver is. It doesn't mean you would have won. I mean, respectfully, Your Honor, I think that I disagree. I think that waiver would mean that he, you know, he just acquiesced in the procedure. All right, but just on point, I'll give you a minute on plain error. Assume we're under plain error. Why should you prevail under plain error? Your Honor, again, he was completely excluded from being able to view jurors. There were some very sensitive juror issues that were raised, especially jurors who would express, I think, juror number 143 who would express concern because she had had a nephew who died of an overdose. And while that juror was allowed to stand, and admittedly we did not raise a cause challenge on that juror, the client might have felt differently. We might have tactically felt that it was a good decision, but the client might have felt differently, was not able to participate. If we conclude, if it had been raised, if the client was up there and he told the attorney, if we conclude that it would have been unsuccessful, there would be no plain error, right? Arguably, yes, Your Honor, but I would, yeah, go ahead. I'm sorry, Your Honor. The voir dire occurred in the presence of the defendant. It occurred, voir dire, very general questions of voir dire were, like, for instance, presumption of innocence. Does anyone know, lawyers in this case, does anybody, you know, does anyone have? Was there additional questioning of the juror outside of the presence of the defendant? They were at sidebars, Your Honor. Of the jurors themselves? Yes. Okay. They were at sidebars with the court and counsel, from which the client was not able to hear what was going on. Can I just ask you, as a matter of practice, in your experience, when there are sidebars like that, do you find that courts generally allow the defendants to come up? My experience is the opposite. Usually the fear is that when a juror needs to be individually brought up for some sensitive questioning, that most courts determine that the juror is more likely to be forthcoming in their answers, the fewer people are up there, particularly if it's the defendants, particularly if you're asking for something that might shed light on whether they would be biased against the defendants. Is that your experience or perhaps not? I don't know. It depends, Your Honor. I do a lot of state court. Obviously, it's different under New York state law. So under New York, they have to affirmatively waive. But in federal court, what's your experience? But in federal court, courts typically don't like it, Your Honor, but clients, you know, clients are the ones who are being judged here openly. No, I understand what you think ought to be the case. I was just curious, as a matter of practice, what your experience has been in federal courts. Courts generally, you're right, Your Honor, in that sense, but maybe that's something that, you know, Yeah, maybe it's wrong. Maybe it's wrong, Your Honor. It doesn't mean it's right. Fair enough. A district court judge at the beginning of the trial could say, Mr. Defendant, if you wish to be present at any sidebars during the trial, you can let me know, right? And then if they want to be present. They could, but they didn't, Your Honor. Right. Okay. With that, I'll rest on my submissions. Thank you very much. Thank you. All right. Mr. St. Laurent. May it please the Court. Good morning. My name is Andrew St. Laurent. I'm representing the defendant appellant, Richard Cindy, this morning. With the Court's permission, I'm going to focus on the admissibility of the so-called DEA investigation under federal rules of evidence 401 and 403, and I'm going to start with the issues of preservation, which was one of the major arguments made by the government. It's not disputed, and it's clearly reflected in the record here, that Mr. Cindy's co-defendant, Jeffrey Civitello, Jr. There are two Civitellos who are defendants in this case. He both filed an in limine motion to exclude evidence of, again, the DEA investigation under federal rule of evidence 403, and he also made a request for a curative instruction after the government relied on that DEA investigation in summation. Mr. Cindy, and again, I believe this is uncontradicted by the government and supported by the Second Circus case law. He's fully entitled to rely on the objections made by a co-defendant, and that is United States v. Garcia. Let me just ask you to go to the merits. Yes. I'm curious. The government cited a whole page of cases where we have affirmed when there's uncharged conduct or prior transactions of the defendant himself. Yes, Your Honor. But that explains why the law enforcement was focused on him. We have allowed that in. Your argument was, well, that's the defendant's conduct, not someone else's. But I don't really understand that argument. It seems to me that there's even less of a concern if it's someone else's conduct. So they're just trying to explain why they ended up being focused on your client by pointing out somebody else who's uncharged who they were focused on initially. I don't understand why that's so prejudicial to come out before the jury because otherwise the government's argument is otherwise the jury might be sitting there thinking, why were they wiretapping a phone? Why were they putting a GPS tracking device? Why were they stopping two cars? The jury would have no understanding and may hold it against the government that they were targeting for no apparent reason. Certainly, Your Honor. I understand the question. So let me talk about the practical aspects. That was a long question. I appreciate it, but it's the whole argument. It is the whole argument. So let's talk about the practical argument. What is Mr. Cindy concerned about as he's sitting at the jury trial hearing all of this stuff about the DEA investigation? Well, not all of the stuff. They didn't go into the details of why they were focused on Junior. They just said they had an— But that's what makes it worse for Mr. Cindy, and if I can get to that, I will get to that. So he's hearing about this DEA investigation through the witnesses, three separate witnesses, four times its summation. DEA investigation comes up. He is thinking and has reason to think that the jury is going to assume he is involved, he is a target, he is a subject of that DEA investigation. And as a matter of fact, he was not. And that is clearly explained by Mr. Civitello, Jr. in his motion in limine. That DEA investigation was into Junior. It was not into Mr. Cindy. That fact was not explained to the jury and could not have been explained to the jury because these defendants were being tried together and the prejudice to Mr. Civitello, Jr., had that DEA investigation been linked to him, would have been overwhelming and would have prevented Mr. Civitello, Jr. from having a fair trial. So the fact that it is not specifically— There would be one question on cross-examination when this came out. It would be were you initially—you mentioned this investigation of Junior. At that time, was there any investigation of my client? The answer would have been no, right? I suppose that's the case, Your Honor. But that presumes that there was a relevant basis for admission of this evidence in the first place, right? And now if I can get to the second part of my answer to your initial question, which is what was the purpose of these allusions to the DEA investigation? And that really is at the heart of the argument. And what we have argued in our papers is that it was to explain what did not need to be explained. The government argued below and argued again before this court that it was necessary for the jury to have a complete picture of the law enforcement investigation in order to avoid drawing an unseemly conclusion about what the law enforcement officers were doing. But if you look at the facts of this case and what the law enforcement officers testified to, A, they were never challenged for having committed anything improper or unseemly. And second, and probably more importantly, there was an independent basis in the record for everything that they did. There was no reason to go into the DEA investigation. And just to go through those events, there's a car stop on March 31, 2021. Mr. Cindy is driving a car. The officer who stopped him said he was speeding. He was going 80 in a 65. That is an independent basis for the stop. Car stop on April 2, 2021. This is the one that ultimately results in the seizure of the nine kilograms of cocaine. The officer who made the stop, a state trooper, testified that the initial basis for the stop was excessive tint on the windows. And then over the course of his testimony, he developed thoroughly the escalating bases and increases of suspicion that led to the ultimate discovery of the nine kilos of cocaine. There were pictures taken of the defendants from a public place by law enforcement officers. Again, this is not unseemly or improper conduct or something a jury would think would need a law enforcement justification. The government in their papers, if unfairly, points out that there was a GPS tracker placed on the blue Jeep, that there's, I guess, an argument that a juror could feel, well, that seems like the wrong thing to do. But first of all, law enforcement testified that a warrant had been obtained for that GPS tracker and that there was court authorization. And that would also presume for a juror to leap to some kind of conclusion that this was improper, or that the jury knew that you needed a warrant for a GPS tracker, which I submit a lay jury person would not know. And I have gone over my time. If I can just very briefly touch on a couple of points here, and this goes to the case law. Yeah, one minute. Thank you. The typical situations where this prior conduct is admitted into evidence is to explain the actions of the defendant. And the United States v. Gonzalez case is a great example of this. The government needed to put into evidence that the defendants were committing a burglary or attempting to commit a burglary to explain the reason why they were running down the street, looking behind them with guns in their hands, right? That is the type of situation in which you need that evidence of an unrelated incident to explain the story of the case. In another case, you have United States v. Fitzgerald. You have some explanation of law enforcement's prior knowledge or understanding of the underlying events in order to explain what law enforcement was doing, but where it's immediately apparent what that explanation was. And in Fitzgerald, the government needed to explain why the officers were doing it. You distinguished all those cases in your brief, so we don't need to go through all those cases. I'm sorry, Your Honor. I was trying to answer the question. That's fine. Thank you very much. Thank you, Your Honor. We'll reserve decision. Have a good day.